IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EVERY RICHARDSON,
ADC #139311                                                                                      PLAINTIFF

V.                         CASE NO. 5:19-CV-188-KGB-BD

ESTELLA BLAND and
CORRECT CARE SOLUTIONS                                                       DEFENDANTS

### RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections**

This Recommended Disposition (Recommendation) has been sent to Judge Kristine G. Baker. Mr. Richardson may file written objections to this Recommendation if he disagrees with its findings or conclusions. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, Mr. Richardson may waive any right to appeal questions of fact.

**II.   Discussion**

A.  Background

Every Richardson, an Arkansas Department of Correction (ADC) inmate, filed this civil rights lawsuit on behalf of himself, James McAlphin, and Kevin Shelton. (Docket entry #2) Pursuant to Court policy, the case was filed as three separate lawsuits.

Mr. Richardson claims that Defendant Bland failed to provide him adequate medical care for his wounded ankles in June of 2016. Because Mr. Richardson previously litigated the issue of medical care for the same medical need, he should not be permitted to relitigate the issue.

B.  Screening

The Court has reviewed Mr. Richardson's complaint to determine whether he has stated a federal claim that can be litigated. *See* 28 U.S.C. § 1915A(a). The pending complaint is clearly an attempt to relitigate an issue that has already been litigated to final judgment in *Richardson v. Kelley*, E.D. Ark. Case No. 5:17-CV-335 (*Richardson I*).

In *Richardson I*, Mr. Richardson claimed that Wendy Kelley, Director of the Arkansas Department of Correction (ADC) and Rory Griffin, Deputy Director of the ADC, failed to provide adequate medical treatment for wounds on his lower extremities beginning in June of 2016. In August of 2018, Judge James M. Moody Jr. dismissed Mr. Richardson's claims that arose prior to July 2016 because Mr. Richardson did not exhaust his administrative remedies before filing his complaint in *Richardson I*.

In February of 2019, Judge Moody granted summary judgment[1] in favor of Defendants Kelley and Griffin. In reaching that conclusion, the Court relied on Mr. Richardson's medical records, which showed that he had been consistently provided with medical care to treat the wounds on his lower extremities:

---

[1] On February 25, 2019, the Court granted summary judgment in *Richardson I*. To date, Mr. Richardson has not appealed that ruling, and the time for doing so has passed.

Here, Mr. Richardson's medical records prove that from June 2016 through December 2017, he was consistently treated for wounds to his lower extremities. During that time, Mr. Richardson's wounds were evaluated, and his dressings were changed almost always on a weekly basis, and sometimes more frequently. (#35-5 at pp.184-86, 178-81, 175-76, 173, 170, 168, 166, 163-65, 159-60, 155, 152, 147, 142-43, 140, 137-38, 131-36, 126-27, 123-24, 121, 118, 109-12, 106-9, 101-4, 95-96, 93, 91, 86-88, 79-81, 73-77, 71, 69, 65-68, 61-63, 59, 54-57, 49-52, 46, 42, 41, 39, 37, 34, 29-30, 12, 6, 3-4, 2) Mr. Richardson was also consistently provided an unna boot between June 2016 and September 2016, and again from April 2017 through September 2017. (*Id*. at pp.184-85, 181, 179, 177, 176, 175, 173, 170, 168, 166, 163-65, 160, 159, 86-88, 81, 79-80, 77, 76, 73-74, 71, 69, 67-68, 66, 63, 61-62, 59, 57, 55, 51-52, 49-50, 46, 42, 39, 37, 34, 30)

In Dr. Jeffrey Stieve's declaration attached to the Defendants' motion for summary judgment, he explains that "[a]n unna boot is a special dressing that is infused In Dr. Jeffrey Stieve's declaration attached to the Defendants' motion for summary judgment, he explains that "[a]n unna boot is a special dressing that is infused with medication that is used on open wounds on a person's lower extremities." (#35-4 at p.3) During the time period at issue, if medical personnel determined that Mr. Richardson's wounds did not require an unna boot or a more complex dressing, he was frequently provided Band-aids. (#35-5 at pp.166, 152, 142-43, 134-138, 123, 109-110, 106-07, 104, 103, 95-96, 93)

In addition, during the relevant time, Mr. Richardson underwent x-ray examinations and an ultrasound; cultures of his wounds were taken on multiple occasions so that he could be provided more precise medical treatment. (*Id*. at pp.184-85, 159, 140, 137, 127, 121, 81, 34, 31, 3-4) Based on the results of those tests, as well as the monitoring of Mr. Richardson's wounds, he was prescribed Keppra, Duloxetine, Clindamycin, Sulfamethoxazole, Mupirocin, and Amoxicillin. (*Id*. at pp.155, 111-112, 108, 95, 91, 79-80, 72, 64, 65, 54, 41, 29, 12) He was also provided Bactroban, Bacitracin, and Venelex ointment to apply directly to the wound area. (*Id*. at pp.132-33, 123, 91, 65)

Importantly, Mr. Richardson's medical records indicate that he did not suffer from any "immune or circulatory issues, such as sickle cell, or HIV, etc." (#35-5 at p.127) Rather, his wounds were "most likely self-inflicted and worsened by fecal contamination." (*Id*.) Medical staff also suggested that Mr. Richardson's wounds were "tampered with" or "manipulated." (*Id*. at pp.164, 133) At various times, Mr. Richardson tested positive for proteus, enterococcus, staphylococcus, and mixed flora. (*Id*. at pp.159, 132, 108, 72) Furthermore, Mr. Richardson admitted that he refused to use Band-aids on his wounds when those were provided and that he used bedsheets, tissue paper, and paper towels to cover his wounds. (#35-1 at p.29) His medical records support this statement. (#35-5 at

> pp.130-131, 126-28, 121, 114, 112, 101) Despite the medical staff's instructions to use both the dressings and ointment provided, on many occasions, Mr. Richardson chose to cover his wounds with brown paper towels, rather than using the Band-aids that had been provided. (#35-5 at pp.143, 140, 138, 134, 130-32, 128, 124, 116-18, 114, 109-12, 106, 103-04, 101, 96, 93, 88, 81, 80, 69, 55-56, 42)
>
> In his deposition, Mr. Richardson testified that, since 2011, he has suffered from ulcers on the backs of his ankles. (#35-1 at p.18) He explained that he notified Defendant Kelley of his failure to receive medication and medical treatment on many occasions, but that she failed to remedy the situation. (#35-1at pp.18-21) In his deposition, Mr. Richardson also repeatedly complained that Defendants Griffin and Kelley should have had additional security measures in place to allow his dressings to be changed more frequently. (*Id*. at pp.53, 58, 80)
>
> Based on a review of Mr. Richardson's extensive medical records, it is clear that his medical needs were consistently monitored and addressed by medical staff members. Mr. Richardson may have experienced a few minor delays in the changing of his wound dressings, but these delays do not rise to the level of a constitutional violation. (#2 at pp.141, 160, 162) . . . . Finally, Mr. Richardson admitted that, after August 2016, when medical personnel ordered that his dressings be changed on a weekly basis, that was "pretty much" done. (*Id*. at p.37)
>
> In his declaration attached to the Defendants' motion, Dr. Stieve testified that Mr. Richardson had received "appropriate and satisfactory" medical treatment for his complaints . . ..

*Richardson I*, (#37, pp.3-6, #38)

Although Mr. Richardson did not name Defendant Bland as a Defendant in *Richardson I*, the doctrine of *res judicata* or claim preclusion prohibits Mr. Richardson from re-litigating the same claim he raised in *Richardson I*:

> [T]he doctrine of *res judicata*, or claim preclusion, applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). "[W]hether two claims are the same for *res judicata* purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their

4

privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

*Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018).

*Richardson I* resulted in a final judgment on the merits and was based on proper jurisdiction. Furthermore, both lawsuits are based on the same claims or causes of action; that is, deliberate indifference to Mr. Richardson's serious need for treatment of wounds on his feet and legs.

Although Defendant Bland was not a party in *Richardson I*, "claim prelusion is not limited to cases involving the same parties or parties who are in traditional 'privity' with defendants in a first action." *Elbert,* 903 F.3d at 783. A plaintiff's claims against new defendants are subject to dismissal when "the relationship of [the new defendants] to the parties sued in the [previous] action is so close that their addition cannot change that the fact that this present action is repetitious and barred by *res judicata*." *Id*. (quoting *Fowler v. Wolff*, 479 F.2d 338, 340 (8th Cir. 1973) (per curiam). The court's reasoning in *Elbert*, *supra*, leads to the same result here. "Any other rule would enable plaintiff to avoid the doctrine of *res judicata* by the simple expedient of not naming all possible defendants in [his] first action." *Elbert*, 903 F.3d at 784 (*quoting Ruple v. City of Vermillion*, 714 F.2d 860, 862 (8th Cir. 1983)).

Mr. Richardson also named Correct Care Solutions (CCS) as a Defendant in this present case. He alleges that the, "policies and customs of Correct Care Solutions LLC . . ., through Defendant Bland has led to prisoners suffering"; that Defendant Bland's

conduct was "condoned" by CCS; and that CCS "adopted a custom and practice of neglect." (#2 at pp.5, 7)

Claims against CCS fail for at least two reasons. First, as explained above, this lawsuit is plainly repetitious of *Richardson I.* As with Defendant Bland, even though CCS was not named as a Defendant in Richardson I, claim preclusion prevents Mr. Richardson from relitigating the medical care he received for his legs and feet in the summer of 2016.

Second, even if his claims were not barred, he could not hold CCS liable based solely on the actions of its employee. *See Burke v. North Dakota Department of Corrections & Rehabilitation*, 294 F.3d 1043, 1044 (8th Cir. 2002). A corporation such as CCS can be held liable in a civil rights lawsuit such as this only for its unconstitutional policies or practices; that is, only if "there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993). Mr. Richardson's conclusory statements that CCS had an unconstitutional policy is insufficient, as a matter of law.

And third, even if he could hold CCS liable for the acts of Defendant Bland, as determined in *Richardson I*, the medical care Mr. Richardson received in 2016 for his leg and feet wounds was "appropriate and satisfactory." *Richardson I*, (#37, pp.3-6, #38) That claim was dismissed with prejudice. It cannot be relitigated.

### III.    Conclusion

The Court recommends that Mr. Richardson's claims be DISMISSED, with prejudice. This dismissal should constitute a "strike" under 28 U.S.C. § 1915(g); and the Court should certify that an *in forma pauperis* appeal of this dismissal would not be taken in good faith.

DATED this 14th day of June, 2019.

_____
UNITED STATES MAGISTRATE JUDGE